**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REVOL. DEVELOPMENT, LLC AND ROBERT M. WALKER, | ) | |
| Plaintiffs, | ) | |
| v. | ) | 25 C 14667 |
| CITY OF CHICAGO AND CHICAGO DEPARTMENT OF PLANNING AND DEVELOPMENT, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiffs Robert Walker and Revol. Development, LLC brought this suit under 42 U.S.C. § 1983 against Defendants City of Chicago and Chicago Department of Planning and Development ("DPD"), alleging violations of substantive and procedural due process under the Fourteenth Amendment. The suit arises from the City's Large Lot Program, under which Walker applied to purchase a vacant City-owned lot on his block for one dollar, obtained City Council authorization for the sale, paid the purchase price, and waited more than five years for a deed that never came. Before the Court are two motions: Defendants' Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and Plaintiffs' Motion to Alter or Amend the Court's April 28, 2026

Order denying their request for a preliminary injunction. The Court resolves the motions together because they turn on the same question.

And that question is narrow. Plaintiffs contend that once the City Council authorized the sale of the lot to them, the City's discretion was spent, only ministerial steps remained, and a protected property interest attached. The Court disagrees. The City Council's ordinance granted permission to sell the lot. It did not obligate the City to sell it. And a discretionary program does not become an entitlement because the City authorized a sale, collected a dollar, and let years pass. Plaintiffs may have been wronged, but a broken promise is a state-law problem, not a due process violation. For the reasons that follow, Plaintiffs' motion is denied, and Defendants' motion is granted.

**BACKGROUND**

The Court assumes familiarity with the facts and analysis set out in its April 28, 2026 Order denying Plaintiffs' motion for a preliminary injunction, Dkt. # 22 (the "PI Order").[1] The PI Order drew its facts from the Complaint and its exhibits. The Court relies on the same allegations here and accepts them as true for purposes of the present motions.

The City's Large Lot Program Ordinance ("LLPO") offered vacant City-owned lots for $1.00 to "Qualifying Property Owners," meaning persons who owned and resided at property on the same block and were not delinquent on property taxes or

[1] The PI Order drew its facts from the Complaint and its exhibits; no evidentiary hearing was held. The Court relies on the same allegations here and accepts them as true for purposes of the present motions.

debts to the City, County, or State. Chicago Municipal Code §§ 2-157-010, -030. DPD, which administers the program, screened applications and forwarded conforming ones to the City Council, which "may authorize or reject the proposed conveyance." *Id*. § 2-157-050.

In 2018, Walker applied to DPD to purchase the lot at 4344 West Adams Street, on the block where he lives. The building that formed the basis for his application, 4316-18 West Adams, is titled to Revol. Development, his single-member LLC, not to Walker individually. After Walker resolved his and the LLC's outstanding debts to the City, the City Council enacted Substitute Ordinance 2019-6466 ("SO2019-6466") in January 2020, which authorized City officials to execute quitclaim deeds conveying listed parcels, including 4344 West Adams, to the "Qualifying Property Owner[s] . . . selected by the Department," or to a trust or entity wholly owned by such an owner. Dkt. # 1-1, at 4. DPD then wrote to Walker that the sale "was approved by the Chicago City Council." *Id*. at 39.

In May 2022, Walker attended DPD's pre-closing conference by Zoom, and in June he mailed in the $1.00 purchase price and a $98.00 recording fee as instructed. That August, DPD advised that its Law Department was "reviewing/preparing deeds for closing." Dkt. # 1, ¶ 30. Plaintiffs allege that DPD repeatedly assured them over the following years that the lot would be deeded once the City's internal process was complete, and that in January 2025 a DPD employee told Walker the lot was ready to be deeded and would be included in a February closing. No closing occurred. Instead,

in April 2025, more than five years after the City Council vote, DPD sent Walker a letter disqualifying his application on a ground it had never previously raised: the "Qualifying Deed was not in applicants' name at the time of your application." Dkt. # 1-1, at 15. Walker responded in writing, explaining that he is the LLC's sole member and that the ownership structure had been disclosed from the start. He received no substantive reply.

Plaintiffs sued and moved for a preliminary injunction barring the City from selling or encumbering the lot. The Court denied the motion on the ground that Plaintiffs had not shown a protected property interest. Defendants then moved to dismiss, and Plaintiffs moved to alter or amend the PI Order.

Walker's frustration is understandable. He did what the City asked for more than five years and was turned away at the end on a basis the City could have identified at the beginning. But the question before the Court is not whether the City treated Plaintiffs fairly. It is whether the Constitution gave them a right to the lot. It did not.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). The Court may consider documents attached to the complaint and matters subject to judicial notice. *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).

"A motion for reconsideration of an order granting or denying a preliminary injunction is properly brought as a motion to alter or amend a judgment under [Rule 59(e)]." *Bolton v. Bryant*, 2014 WL 13110698, at *2 (N.D. Ill. 2014) (collecting cases). A Rule 59(e) motion allows the movant to alert the district court to "a manifest error of law or fact, or newly discovered evidence." *Bordelon v. Chicago School Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). It is not a vehicle for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004). Rather, the movant must "clearly establish one of the aforementioned grounds for relief." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (quotations and citation omitted). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize

controlling precedent." *Oto v. Metro. Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000) (quotations and citation omitted).

## DISCUSSION

### I. Motion to Reconsider

Plaintiffs seek reconsideration of the PI Order for manifest error of law, not fact. Their theory is that the Court conflated two distinct stages of the Large Lot Program: a discretionary application stage, which ended when the City Council enacted SO2019-6466, and a ministerial implementation stage, during which the City had no remaining discretion to deny them the deed. In Plaintiffs' view, a protected property interest attached at the City Council vote, and nothing that followed could take it away.

This is not a new argument. Plaintiffs made it in their reply in support of their preliminary injunction motion, relying on the same lead authority they rely on now. The Court considered and rejected it, holding that SO2019-6466 "'authorized' City officials to execute deeds to applicants who qualified under the LLPO—a purely internal authorization, not a guarantee of conveyance." Dkt. # 22, at 7. That is ordinarily the end of a Rule 59(e) motion. *Ahmed*, 388 F.3d at 249.

The additional authorities Plaintiffs cite do not establish manifest error and several cut the other way. *Kyle v. Morton High School*, 144 F.3d 448 (7th Cir. 1998), affirmed dismissal of a due process claim by a probationary teacher who argued that procedural defects in his termination had prevented him from acquiring tenure. The Seventh Circuit held that a claim that the government "prevented [the plaintiff] from

acquiring a property right" is "not a cause of action under [Section] 1983," because "the loss of the opportunity to acquire property is not a deprivation of a constitutional right." *Id*. at 452. The language Plaintiffs quote from *Kyle*—that entitlement "does not depend upon whether the right has been acknowledged or adjudicated"—is the court's quotation of *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992), a statutory-construction case about a workers' compensation statute. *Kyle* described the implications of that language for Section 1983 litigation as "unclear," considered the plaintiff's argument that he already "qualifies" for the benefit only "as an additional basis" for decision, and rejected it because the plaintiff had not in fact qualified under state law. 144 F.3d at 452–54. *Logan v. Zimmerman Brush Co.* restates the standard the Court applied—that the "hallmark of property" is "an individual entitlement grounded in state law, which cannot be removed except 'for cause'"—and found such an entitlement only because Illinois law *guaranteed* the claimant an adjudication of his discrimination charge. 455 U.S. 422, 430–31 (1982). None of these decisions is "controlling precedent" the Court failed to recognize. *Oto*, 224 F.3d at 606.

Plaintiffs' textual argument fares no better. Their contention that neither the LLPO nor SO2019-6466 expressly authorizes DPD to revisit eligibility after a City Council vote fails for two reasons. First, it inverts the inquiry. The question is not whether the ordinances *permit* DPD to deny an application after Council authorization; it is whether the ordinances confer on an applicant an entitlement to conveyance so secure that it can be denied only if specified conditions are met. *See Bell v. City of*

*Country Club Hills*, 841 F.3d 713, 719 (7th Cir. 2016); *Cornelius v. LaCroix*, 838 F.2d 207, 210 (7th Cir. 1988) (property entitlement exists "[w]here state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit"). They do not. Section 2-157-050 provides that the City Council "may authorize or reject" a proposed conveyance, and SO2019-6466 "authorize[s]" City officials to execute deeds to Qualifying Property Owners "selected by the Department." A Qualifying Property Owner, in turn, is a Person who *owns* and resides at property on the same block. Plaintiffs' own pleading establishes that the LLC, not Walker, holds title to 4316-18 West Adams. Whatever the merits of DPD's ultimate determination, the ordinance the City Council enacted never purported to obligate the City to convey the lot to anyone. Second, even if DPD exceeded its authority under the ordinances by reopening eligibility after the Council vote, "a unit of state or local government does not violate the federal Constitution just because it violates a state or local law." *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002).

The Court remains mindful, as it said in April, that the sequence of events Walker describes is not to his liking, and understandably so. But disappointment with the result is not manifest error. *Oto*, 224 F.3d at 606. The motion to alter or amend is denied.

## II. Motion to Dismiss

Plaintiffs' principal response to the motion to dismiss is procedural: the PI Order addressed likelihood of success, whereas Rule 12(b)(6) requires the Court to accept the Complaint's allegations as true and draw inferences in Plaintiffs' favor. That is correct

as far as it goes, and the Court applies the Rule 12(b)(6) standard here without treating the PI Order as binding. But the distinction does not help Plaintiffs. The existence of a protected property interest turns on "existing rules or understandings that stem from an independent source such as state law," *Tenny v. Blagojevich*, 659 F.3d 578, 581 (7th Cir. 2011) (quotation omitted), and where, as here, the relevant source is a municipal ordinance whose text is before the Court, the question is one of law. *See Bell,* 841 F.3d at 718–20. The Court accepts as true every fact Plaintiffs allege: that DPD forwarded their application to the City Council, that the Council enacted SO2019-6466, that Plaintiffs tendered $99.00, that DPD held a pre-closing conference and repeatedly represented that deeds were being prepared. The question is whether those facts, taken as true, establish a "legitimate claim of entitlement" to the lot. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). They do not.

Both of Plaintiffs' claims require a protected property interest at the threshold. *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1039 (7th Cir. 2021) (procedural due process); *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1002 (7th Cir. 2008) (substantive due process). The LLPO establishes a discretionary benefit program in which the City Council "may authorize or reject" proposed conveyances. Chicago Municipal Code § 2-157-050. SO2019-6466 "authorized" the Mayor and City Clerk to execute deeds; it did not direct that any particular conveyance occur. Authorization to act is not an obligation to act. In *FKFJ, Inc. v. Village of Worth*, the Seventh Circuit held that a village code providing that licenses "may" be renewed, and giving the clerk

"authority to approve applications for renewals, rather than mandating that the clerk approve and execute renewals when the requisite criteria is met," created only "a mere unilateral expectation" of renewal. 11 F.4th 574, 592 (7th Cir. 2021). The same structure is present here. A "mere opportunity to acquire property . . . does not itself qualify as a property interest protected by the Constitution." *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007) (quotation omitted). And because no deed was ever executed, the post-conveyance reverter provision of Section 2-157-060 has no application. Dkt. # 22, at 5–6.

*Cornelius v. LaCroix*, on which Plaintiffs rely, illustrates the point. There, a contractor that registered with the defendant and been "recognized" as a minority business enterprise on several past projects claimed a protected interest in future certification. 838 F.2d 207, 210 (7th Cir. 1988). The Seventh Circuit held that registration and past recognition "do not create an entitlement," because "acceptance was a ticket good for one ride only," and distinguished a case in which the government "had already conferred that benefit." *Id*. at 211. People have a legitimate claim of entitlement "to keep that which presently securely belongs to them." *Id*. at 210. The lot never belonged to Plaintiffs, securely or otherwise.

Plaintiffs' reliance on DPD's assurances and their $99.00 payment does not alter this conclusion. Those facts may well support a claim under state law. Plaintiffs describe what is, in substance, a promise made and broken. But "it has long been settled that a mere breach of contract by the government does not give rise to a constitutional

claim." *Taake v. Cnty. of Monroe*, 530 F.3d 538, 541 (7th Cir. 2008) (cleaned up). *Taake* is instructive. The plaintiff there sued a county under Section 1983 for refusing to complete a land sale, seeking specific performance and an injunction against transfer to anyone else—the relief Plaintiffs seek here. *Id*. at 541–43. The Seventh Circuit held that his interest was a "commercial interest under a contract," not a property interest protected by substantive due process, and that "the proper tribunal to adjudicate issues arising from the contract (or alleged contract) is a state court." *Id*. Because Plaintiffs have not alleged a constitutionally protected property interest, both counts fail at the threshold.

Even if Plaintiffs had alleged a protected interest, neither count would survive. As to procedural due process (Count II), due process "is satisfied when the defendant is given notice and an opportunity to respond." *Davis v. Hutchins*, 321 F.3d 641, 645–46 (7th Cir. 2003) (quotation omitted). The Complaint and its exhibits establish that DPD notified Plaintiffs in writing of the reason for the disqualification and that Walker submitted a written response contesting it on the merits. Plaintiffs' response brief does not meaningfully engage with this point beyond restating the sequence of events. The City's silence in response to Walker's letter, and its refusal to reverse course, show that he lost, not that he was denied process.

As to substantive due process (Count I), Plaintiffs identify no fundamental right at stake, and an interest in completing a land purchase from the City is not one. *See Taake*, 530 F.3d at 54. Where a substantive due process claim rests only on the

deprivation of a property interest, the plaintiff "must show either the inadequacy of state law remedies or an independent constitutional violation." *Gable v. City of Chicago*, 296 F.3d 531, 541 (7th Cir. 2002) (quotation omitted). Plaintiffs offer their procedural due process count as the "independent" violation, but a plaintiff who alleges no "constitutional violation other than violations of due process" has not shown that the City violated "some other substantive constitutional right." *Id*. (quotation omitted).

And Plaintiffs' assertion that contract and unjust-enrichment remedies are "inadequate" is conclusory. They identify no reason why the relief they seek could not be obtained through those or other state-law avenues. The Seventh Circuit affirmed dismissal on precisely this basis in *Doherty*, holding that a bare allegation that "available state remedies are inadequate" is insufficient where the plaintiff "has failed to explain why she cannot pursue her claim in the Illinois state courts." *Doherty v. City of Chicago*, 75 F.3d 318, 324–26 (7th Cir. 1996) (affirming dismissal of substantive due process claim).

The Court emphasizes the limits of this ruling. It holds only that the facts alleged do not state a claim under the Fourteenth Amendment. Nothing in this Order addresses whether DPD correctly applied the LLPO's eligibility criteria to Plaintiffs' application, or whether Plaintiffs may have a remedy under Illinois law. Those questions are not before the Court.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Alter or Amend Judgment [26] is denied. Defendants' Motion to Dismiss the Complaint [23] is granted. The Complaint is dismissed with prejudice. Plaintiffs may raise any state law claims they may have in the appropriate state forum.

It is so ordered.

Dated: August 31, 2026

Charles P. Kocoras
United States District Judge